IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| EXPERIENCE HENDRIX, L.L.C., a Washington Limited Liability Company, and AUTHENTIC HENDRIX, LLC, a Washington Limited Liability Company, | : : : : : : : | NO. C09-0285TSZ<br><br>COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF |
| Plaintiffs, | : : : | ORIGIN/UNFAIR COMPETITION, VIOLATION OF THE |
| vs. | : : : : | CONSUMER PROTECTION ACT, CONTRIBUTORY |
| TIGER PAW DISTRIBUTORS, LLC, a California Limited Liability Company; PRIVATE LABEL DISTILLERY, LLC, a Colorado Limited Liability Company; SAVANNAH DISTRIBUTING CO., a Georgia Corporation; JOE WALLACE and LEON HENDRIX, individuals, | : : : : : : : : | INFRINGEMENT, UNJUST ENRICHMENT, CONSTRUCTIVE TRUST, AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF |
|  | : : | JURY TRIAL |
| Defendants. | : : | DEMANDED |

## COMPLAINT

COME NOW Plaintiffs, Experience Hendrix L.L.C. and Authentic Hendrix,

LLC, by its attorneys, Crain Law Group, LLC and Shukat Arrow Hafer Weber &

Herbsman, LLP, and allege for their complaint, upon knowledge and belief as to

their own acts and upon information and belief as to the acts of all others, the following:

## THE PARTIES

1.     Plaintiff Experience Hendrix, L.L.C. ("Experience") is a limited liability company established under the laws of the State of Washington.  Plaintiff Experience is the assignee of and sole owner of the copyrights and trademark rights owned by Jimi Hendrix.  It is the proprietor of the intellectual property rights relating to a vast catalog of musical compositions and sound recordings created by the late Jimi Hendrix.

2.     Plaintiff Authentic Hendrix, LLC ("Authentic") is a Washington Limited Liability Company whose members reside outside the State of Georgia. Plaintiff Authentic is the worldwide licensing arm of Experience Hendrix.

3.     Defendant Leon Hendrix, is a citizen and resident of the State of California.

4.     Defendant Tiger Paw Distributors, LLC ("Tiger Paw") is a California Limited Liability Company with its principal place of business at 18653 Ventura Blvd., Tarzana, California  91356.

5.    Defendant Private Label Distillery, LLC, a Colorado limited liability company with its principal place of business located at 16730 E. 2nd Avenue, Aurora, Colorado 80011.

6.    Defendant Savannah Distributing Co., Inc. is the distributor of the infringing Product that is at issue in this litigation and is a Georgia Corporation with its principal place of business located at 2425 West Gwinnett Street, Savannah, Georgia 31415.

7.    Defendant Joe Wallace is the President and Founder of the corporate defendant, Tiger Paw, and controls the infringing activity of the corporation. On information and belief, Wallace is a citizen and resident of the State of California.

## JURISDICTION AND VENUE

8.    Plaintiffs bring this suit against all Defendants seeking damages and injunctive relieve as a result of trademark infringement under the trademark laws of the United States, namely, Title 15 of the United States Code, 15 U.S.C. §§1114 and 1116-1118, inclusive; 15 U.S.C. §§1051, *et seq.* ("Lanham Act"), as well as various other state and federal claims.

9.    This Court has subject matter jurisdiction of this action under the provisions of 15 U.S.C. §1121; 28 U.S.C. 1338(a) and (b); 28 U.S.C. §1332. This Court also has jurisdiction based upon the diversity of the parties pursuant to 28

U.S.C. §1332, as this is a civil action between citizens of different states in which the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10.    This Court has personal jurisdiction over each and every one of the Defendants, on information and believe, has maintained systemic contact with the State of Georgia, has transacted business within the State of Georgia (e.g., advertised, marketed, sold and/or shipped its products, including but not limited to the infringing products discussed below, to Georgia residents, including but not limited to those within the venue of this Court) and/or has committed acts that have caused tortious injury to Plaintiffs in this Judicial District pursuant to Georgia's long-arm statute, O.C.G.A. § 9-10-91

11.    Venue in this District is proper under 28 U.S.C.§ 1391(b) and because a substantial number of the infringing acts complained of herein occurs or has occurred in Georgia and within this judicial district.

## SUMMARY OF CLAIMS

### THE HENDRIX FAMILY'S COMMITMENT TO PRESERVING JIMI HENDRIX'S MUSICAL AND CULTURAL LEGACY

12.    Jimi Hendrix ("Jimi") was a famous musician, guitar player and celebrity.  Jimi died in 1970.  Al Hendrix was Jimi's father and sole heir.  In 1995, Al Hendrix founded  Experience  Hendrix  L.L.C.  and  Authentic  Hendrix, LLC

4

(collectively the "Hendrix Family Companies").  Al Hendrix transferred all of his rights in Jimi's estate to the Hendrix Family Companies.  Al handpicked Janie Hendrix, Jimi's cousin Bob Hendrix and certain other family members he wanted to manage those companies.  For good reasons, Al didn't select Leon Hendrix or his family for that management team.

13.   Al Hendrix and his select family members have owned and continuously operated the Hendrix Family Companies since 1995.  Al and his close family members and their companies have been singularly committed to preserving Jimi Hendrix's musical, cultural and artistic legacy.  The Hendrix Family Companies have owned, managed, licensed and tastefully marketed Jimi's music, recordings, artistic properties and related merchandise throughout the world.  As a result of Jimi's unique talents, and the Hendrix family companies' continued stewardship and promotion, Jimi Hendrix and his works, name and image are famous, and enjoy continuing celebrity status.

14.   Since 1996 or earlier, the Hendrix Family Companies have used federally registered and common law trademarks, service marks, trade names and logos to sell Jimi Hendrix related promotional merchandise and services to the general consuming public through catalog sales, Internet websites, retail stores, and licensee sales.  The types of goods sold under the various marks and under the

authority of the Hendrix family companies are wide-ranging.  The marks owned and used by the Hendrix Family Companies include "JIMI HENDRIX", "THE JIMI HENDRIX EXPERIENCE", "HENDRIX", "EXPERIENCE HENDRIX", "AUTHENTIC HENDRIX", and the design marks of the signature of Jimi Hendrix, and an image (head or bust) of Jimi Hendrix, such as the following:







15.    The Hendrix Family Companies have preserved the Jimi Hendrix legacy and have continuously enforced their trademark rights.

16.    Al Hendrix died on April 17, 2002.  In his Last Will, Al bequeathed the ownership of the Hendrix Family Companies to select family members.  Al bequeathed to Defendant Leon Hendrix a single gold Jimi Hendrix record and nothing more.

17.    As early as 2001, Leon Hendrix was closely associated with Craig Dieffenbach ("Dieffenbach").  Immediately after Al's death, Leon petitioned a Washington court to invalidate Al's Last Will.  Dieffenbach paid more than $3,100,000 to initiate and prosecute Leon's challenge to Al Hendrix' estate plan. In 2004, a Washington court denied that challenge, ruling that neither Leon nor his children had any claim to the Jimi Hendrix Legacy.

## PRIOR INJUNCTION AGAINST LEON HENDRIX FOR LIQUOR PRODUCTS

18.    In September 2005, Dieffenbach, Leon Hendrix and others formed a Washington company called Electric Hendrix, LLC for the primary purpose of

selling, bottling and marketing distilled spirits as "HENDRIX ELECTRIC", "JIMI HENDRIX ELECTRIC", or "JIMI HENDRIX ELECTRIC VODKA".  In 2006, Electric Hendrix, LLC began marketing its vodka and merchandise, and promoting its goods and services using a Jimi Hendrix "signature" mark, and Jimi Hendrix "headshot" mark.



19.    In 2007, Experience Hendrix, L.L.C. and Authentic Hendrix, LLC commenced an action against Dieffenbach and his companies for infringement of their trademarks. *Experience Hendrix, L.L.C. et al v. Electric Hendrix, LLC*, vs. *Electric Hendrix, LLC., a Washington Limited Liability Company; Electric Hendrix Apparel, LLC., a Washington Limited Liability Company; Electric Hendrix Licensing LLC., a Washington Limited Liability Company; and Craig Dieffenbach, an individual* USCD WDWA, Case No. C07-338Z.  In 2008, the

Court entered a judgment in the plaintiffs' favor against the defendants and issued a permanent injunction prohibiting the sale and distribution of alcoholic beverages. Although not a named party, Leon Hendrix had an ownership interest and was employed by the Defendants in that Action. Leon Hendrix has been and is on actual and constructive notice of the Court's Order and injunction and is bound by its terms.

## SINCE 2014, DEFENDANTS HAVE ENGAGE IN THE SAME TASTELESS INFRINGING CONDUCT

20.   In or about 2014, Leon Hendrix partnered with Defendant Wallace and Tiger Paw in another tasteless campaign to do the same thing that he and Craig Dieffenbach were enjoined from doing in 2008:





Enjoined Product                    Infringing Product

21.     Defendants have used Plaintiffs' copyrights and incontestable trademarks to promote the sale of their alcohol products.   Defendant Wallace submitted to the United States Patent and Trademark Office ("USPTO") applications to trademark "JH PURPLE HAZE LIQUEUR"  "PURPLE HAZE LIQUEUR" "Purple Haze LIQUEUR" (the "Wallace Applications").  The USPTO examiners declined each of those applications.

22.     Nevertheless, Wallace, his company Tiger Paw Distributors, and Leon Hendrix proceeded with their infringing activities and are distributing the Infringing Product throughout the state of Georgia.

23.     Leon is featured prominently in Defendants' advertising[1].



Infringing Product

24.    Defendants' use of the Plaintiffs' headshot logo, overwritten by the stylized "PH"[2] and the words "Purple Haze" have created a likelihood of confusion with Plaintiffs' Hendrix Marks, including Plaintiffs' registered stylized graphical mark of Jimi Hendrix's signature, Plaintiffs' "headshot" logo, and the combination of the Hendrix Marks used by Plaintiffs.  Defendants use of Plaintiff's marks, song and album titles, along with other elements, to advertise and sell their products are intended to deceive and defraud the public and to pass off and palm off their liqueur and other merchandise as authorized by the Hendrix Family Companies and Jimi Hendrix's heirs.

25.    Defendants have ignored Plaintiffs' repeated demands to stop infringing and misappropriating the Hendrix Family Companies' rights.

26.    As shown in the above pictures, Defendants' unlawful actions are intentional and designed to capitalize on the goodwill, recognition and fame associated with the Hendrix Family Companies' marks and rights that relate to Jimi Hendrix.  Those acts have tarnished and diluted the value of the marks by associating the Hendrix Family Companies with the commercial sale of Defendants' unauthorized alcohol product.  By this lawsuit, the Plaintiffs seek to

---

[2] Done in a manner to look like "JH".

stop Defendants from infringing and misappropriating their marks and goodwill, to disgorge all profits they have unlawfully made, and to obtain redress for the damage done to the Hendrix Family Companies and their marks.

## PLAINTIFFS' RIGHTS -

## BACKGROUND

27.     Widely recognized as one of the most creative and influential musicians of the 20th century, Jimi Hendrix pioneered the explosive possibilities of the electric guitar.  Hendrix's innovative style created a new musical form.  <u>Are You Experienced</u> has remained one of the most popular rock albums of all time, featuring tracks like "Purple Haze," "The Wind Cries Mary," "Foxy Lady," "Fire," and "Are You Experienced?."   In 1968, Hendrix recorded one of his seminal works, "Voodoo Child (Slight Return)," and his performance of the song in 1969 in Woodstock was one of the most memorable songs performed.  Jimi Hendrix's meteoric rise in the music industry took place in just four short years, prior to his tragic death at the age of 27.

28.     Jimi Hendrix generated an astounding collection of musical compositions and recordings over the course of his short career.  His music embraced the influences of blues, ballads, rock, R&B, and jazz.

29.     Hendrix continues to find new audiences and remains one of the most popular and influential figures in the history of rock music and an influence on every generation of musicians since his untimely death in 1970.

30.     In September 2015, Showtime released "Jimi Hendrix: Electric Church" which chronicles the legendary Atlanta Pop concert in 1970.  Hailed as the Southern Woodstock, Byron, Georgia hosted the Second Atlanta International Pop Festival, where in July, 1970, Jimi Hendrix played to the largest American audience of his career.  Standout performances include such Hendrix classics as "Hey Joe," "Voodoo," and "Purple Haze."

## COPYRIGHTS IN HENDRIX'S "PURPLE HAZE"

31.     In January 1967, Jimi Hendrix created, composed, authorized, and wrote the original musical composition entitled "Purple Haze," which consists wholly of original material and was and is copyrightable matter under the law of the United States.  A claim of copyright in the musical composition "Purple Haze" was registered and recorded with the United States Copyright Office – Registration Nos. RE 735-885 and RE 736-563.

32.     Jimi Hendrix also recorded "Purple Haze" in January 1967.  A claim of copyright in the sound recording "Purple Haze" was registered and recorded in the United States Copyright Office, Registration No. SR 298-418.

33.     Plaintiff Experience is the assignee of all rights in and to the copyright registrations described hereinabove, i.e., RE 735-885, RE 736-563 and SR 298-418.

34.     From the date of creation through the date of registration, Plaintiff Experience has complied in all respects with the Copyright Act of 1976 and all other laws governing copyright with respect to the above-referenced copyright.

## COPYRIGHTS IN HENDRIX'S "VOODOO CHILD"

35.     In May, 1968, Jimi Hendrix created, composed, authored, and wrote the original musical composition entitled "Voodoo Child (Slight Return)," which consists wholly of original material and was and is copyrightable matter under the law of the United States.  A claim of copyright in "Voodoo Child (Slight Return)" was registered and recorded with the United States Copyright Office.  SR 298-418.

36.     Plaintiff Experience is the assignee of all rights in and to the registration described hereinabove.

37.     From the date of creation through the date of registration, Plaintiff Experience has complied in all respects with the Copyright Act of 1976 and all other laws governing copyright with respect to the above-referenced copyrights.

## HENDRIX COMPANIES' DESIGN MARKS

38.    Through substantial and continuous sales and promotion of goods and services under the Hendrix Family Companies' marks for over a decade, the Hendrix Family Companies have been the recognized source of Jimi Hendrix-related goods and services.  By their sponsorship and promotion of charitable and educational events and private touring music, art, and multimedia events emphasizing the cultural and artistic legacy of Jimi Hendrix the Hendrix Family Companies' marks are well-known by consumers throughout the United States and elsewhere.

## PLAINTIFFS' TRADEMARK RIGHTS

39.    Plaintiff Experience owns word, design, and composite marks, which are registered on the Principal Register of the United States Patent and Trademark Office (hereinafter, "USPTO"), and are incontestable pursuant to 15 U.S.C. § 1065, including for purposes of the allegations herein:  U.S. Registration Nos. 2,322,761 ("JIMI HENDRIX" in Class 25); 2,245,408 ("AUTHENTIC HENDRIX" in Class 35); 2,245,409 ("EXPERIENCE HENDRIX" in Class 16); 2,250,912 ("EXPERIENCE HENDRIX AND DESIGN" in Class 9); 2,383,500 ("JIMI HENDRIX" for entertainment services, in Class 41); 2,997,676 ("JIMI HENDRIX" in Class 41); 2,987,556 ("EXPERIENCE HENDRIX" for

entertainment services, in Class 41); 3,001,465 ("JIMI HENDRIX AND DESIGN" (signature logo) in Class 16); 3,00l,464 ("JIMI HENDRIX AND DESIGN" (signature logo) in Class 41); 2,998,059 ("JIMI HENDRIX.COM" in Class 41); 2,998,058 ("JIMI HENDRIX,COM AND DESIGN" (signature logo) in Class 41); 3,072,909 ("MISCELLANEOUS DESIGN" in Class 35); 3,312,206 ("AUTHENTIC HENDRIX AND DESIGN" in Class 9); 3,312,071 ("AUTHENTIC HENDRIX AND DESIGN" in Class 5); 3,302,117 ("AUTHENTIC HENDRIX AND DESIGN" in Class 25); 3,297,742 ("AUTHENTIC HENDRIX AND DESIGN" in Class 6); 3,297,740 ("AUTHENTIC HENDRIX AND DESIGN" in Class 3); 3,334,862 ("AUTHENTIC HENDRIX AND DESIGN" in Class 16); 3,399,951 ("AUTHENTIC HENDRIX AND DESIGN" in Class 20): 3,865,983 ("AUTHENTIC HENDRIX AND DESIGN" in Class 26); 3,378,814 3; 409,133 ("HENDRIX" in Class 16); 3,409,132 ("HENDRIX" in Class 26); 3,302,110 ("HENDRIX" in Class 9); 3,302,093 ("HENDRIX" in Class 20); 3,302,118 ("HENDRIX" in Class 25); 3,290,861 ("JIMI HENDRIX AND DESIGN" in Class 20); 3,306,892 ("JIMI HENDRIX AND DESIGN" in Class 25); 3,306,891 ("JIMI HENDRIX AND DESIGN" (signature logo) in Class 6); 3,374,813 ("JIMI HENDRIX ELECTRIC GUITAR COMPETITION" in Class 16); 3,328,324

("JIMI HENDRIX ELECTRIC GUITAR COMPETITION" in Class 14); 3,322,319 ("JIMI HENDRIX ELECTRIC GUITAR FESTIVAL" in Class 16); 3,290,862 ("JIMI HENDRIX EXPERIENCE I AM EXPERIENCED AND DESIGN" in Class 35); 3,328,587 ("JIMI HENDRIX AND DESIGN" (headshot with signature logo) in Class 16); and 3,328,579 ("JIMI HENDRIX AND DESIGN" (headshot with signature logo) in Class 25).

40.     Collectively, the marks identified in Paragraph 39 shall be referenced herein as the "Hendrix Marks."

41.     Plaintiffs use, license, advertise, and promote the Hendrix Marks in connection with a broad range of goods and services.

42.     Since at least as early as 1996, Plaintiffs have used the color purple in and as part of their marketing, advertising, website, and corporate identity materials, such as in their corporate logo, and in products they sell and license. Purple is a color widely associated with Jimi Hendrix, as one of his most popular songs is entitled "Purple Haze," the copyrights to which are currently owned by Plaintiff Experience.

43.     Plaintiffs and their authorized licensees have made continuous, substantial and vigorous use and promotion of the Hendrix Marks in the marketplace.  Through substantial sales and promotion of goods and services under

the Hendrix Marks, Plaintiffs are the recognized source of Jimi Hendrix-related goods and services, and the Hendrix Marks are valuable and recognized symbols of Plaintiffs' goodwill.  Plaintiffs' Hendrix Marks are famous and well-known by consumers throughout the United States, indeed the world.

44.   Plaintiffs have successfully distinguished their products and services from unauthorized recordings, merchandise, public domain, and other products and services, by engaging in a significant effort to enforce their rights and remove unauthorized goods and merchandise from the marketplace, and by associating the Hendrix Marks with Plaintiffs' authorized products and services.

45.   Through their sponsorship and promotion of charitable and educational events, such as the Jimi Hendrix Electric Guitar Competition, private touring music, art, and multimedia events regarding the musical legacy of Jimi Hendrix, and through their emphasis on the cultural and artistic legacy of Jimi Hendrix, Plaintiffs have intentionally associated the Hendrix Marks with Jimi Hendrix's innovative spirit and musical and artistic talent in the marketplace.

46.   Because drugs and alcohol have been connected to Jimi Hendrix's untimely death, and because Jimi Hendrix fans, and Plaintiffs' customers, include a large number of young people, Plaintiffs decided early in their operation not to

license the Hendrix Marks, or Jimi Hendrix music, for use in connection with alcohol or drug related products.

### DEFENDANTS' INFRINGING CONDUCT AND THE INFRINGING PRODUCT

47.     In or about 2014, the Defendants began a campaign to promote their alcoholic beverage that is specifically associated with Jimi Hendrix and the Hendrix Marks.

48.     On or about January 19, 2015, Defendant Wallace personally filed a United States Patent and Trademark Office application for the mark "JH PURPLE HAZE LIQUEUR" (Serial No. 86507590), in International Class 33, for "distilled spirits, spirits, spirits and liqueurs."

49.     On or about January 19, 2015, Defendant Wallace personally filed a United States Patent and Trademark Office application for the mark "PURPLE HAZE LIQUEUR" (Serial No. 86507583), in International Class 33, for "distilled spirits, spirits, spirits and liqueurs."

50.     On or about March 29, 2014, Defendant Wallace personally filed a United States Patent and Trademark Office application for the mark "Purple Haze LIQUEUR" (Serial No. 86236392) in International Class 33 for "distilled spirits, spirits, spirits and liqueurs."

51.     The United States trademark applications referenced in paragraphs 49,

50, and 51 herein shall be collectively referred to as the "Wallace Applications."

52.     On July 7, 2014, the USPTO Examiner refused registration for

"Purple Haze LIQUEUR" (Serial No. 86236392)[3].  In refusing the application, the

United States Patent and Trademark Office stated:

> "The applicant also adds a design element of Jimi Hendrix and smoke
> designs that form the letters "JH." For a composite mark containing
> both words and a design, the word portion may be more likely to be
> impressed upon a purchaser's memory and to be used when requesting
> the goods and/or services. *Joel Gott Wines, LLC v. Rehoboth Von
> Gott, Inc.*, 107 USPQ2d 1424, 1431 (TTAB 2013) (citing *In re
> Dakin's Miniatures, Inc.* , 59 USPQ2d 1593, 1596 (TTAB 1999));
> TMEP §1207.01(c)(ii); *see In re Viterra Inc.*, 671 F.3d 1358, 1362,
> 101 USPQ2d 1905, 1908, 1911 (Fed. Cir. 2012) (citing *CBS Inc. v.
> Morrow*, 708 F. 2d 1579, 1581-82, 218 USPQ 198, 200 (Fed. Cir
> 1983)). Thus, although such marks must be compared in their
> entireties, the word portion is often considered the dominant feature
> and is accorded greater weight in determining whether marks are
> confusingly similar, even where the word portion has been
> disclaimed. *In re Viterra Inc.*, 671 F.3d at 1366, 101 USPQ2d at 1911
> (Fed. Cir. 2012) (citing *Giant Food, Inc. v. Nation's Foodservice, Inc.
> *, 710 F.2d 1565, 1570-71, 218 USPQ2d 390, 395 (Fed. Cir. 1983))."

> …

> "Registration is refused because the applied-for mark consists of or
> includes matter which may falsely suggest a connection with Jimi
> Hendrix. Although Jimi Hendrix is not connected with the goods

---

[3] While there are other "Purple Haze" trademarks on the market (and cited by the USPTO is their refusal), none capitalize on the Jimi Hendrix indicia or reproduce any Jimi Hendrix material in connection with their products.  Moreover, the use of the song title "Purple Haze," with Hendrix trademarks, has acquired secondary meaning.  As noted by the examiner, Jimi Hendrix is so famous, that use of it presumptively creates consumer confusion.

provided by applicant under the applied-for mark, Jimi Hendrix is so famous that consumers would presume a connection. Trademark Act Section 2(a), 15 U.S.C. §1052(a); *see* TMEP §1203.03, (c). *See generally Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983); *In re Cotter & Co.*, 228 USPQ 202 (TTAB 1985); *Buffett v. Chi-Chi's, Inc.* , 226 USPQ 428 (TTAB 1985)."

…

"The attached Internet evidence shows that Jimi Hendrix was a famous guitarist, singer, and songwriter, and the mark would be identified as referencing him as his image is an element of the mark, as is shown by the mark description of record.

The fact that applicant did not intend to adopt the name of, or trade upon the goodwill of, the named person or institution does not obviate a false connection refusal. Trademark Act Section 2(a) does not require such intent. TMEP §1203.03(c)(i); *see, e.g., S & L Acquisition Co. v. Helene Arpels, Inc.*, 9 USPQ2d 1221, 1224 (TTAB 1987); *Consol. Natural Gas v. CNG Fuel Sys., Ltd.*, 228 USPQ 752, 754 (TTAB 1985). However, evidence of such intent is highly probative that the public will make the intended false connection. *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 703 F.2d 1372, 1377, 217 USPQ 505, 509 (Fed. Cir. 1983); TMEP §1203.03(c)(i).

For the aforementioned reasons, registration is refused pursuant to Trademark Act Section 2(a).

If applicant responds to the refusals, applicant must also respond to the requirements set forth below."

Thereafter Defendant Wallace abandoned the applications.

53.     On May 11, 2015, the USPTO Examiner refused registration for

"PURPLE HAZE LIQUEUR" (Serial No. 86507583).  In refusing the application,

the United States Patent and Trademark Office stated:

> "The applicant also adds a design element of Jimi Hendrix and smoke
> designs that form the letters "JH." For a composite mark containing
> both words and a design, the word portion may be more likely to be
> impressed upon a purchaser's memory and to be used when requesting
> the goods and/or services. *Joel Gott Wines, LLC v. Rehoboth Von
> Gott, Inc.*, 107 USPQ2d 1424, 1431 (TTAB 2013) (citing *In re
> Dakin's Miniatures, Inc.* , 59 USPQ2d 1593, 1596 (TTAB 1999));
> TMEP §1207.01(c)(ii); *see In re Viterra Inc.*, 671 F.3d 1358, 1362,
> 101 USPQ2d 1905, 1908, 1911 (Fed. Cir. 2012) (citing *CBS Inc. v.
> Morrow*, 708 F. 2d 1579, 1581-82, 218 USPQ 198, 200 (Fed. Cir
> 1983)). Thus, although such marks must be compared in their
> entireties, the word portion is often considered the dominant feature
> and is accorded greater weight in determining whether marks are
> confusingly similar, even where the word portion has been
> disclaimed. *In re Viterra Inc.*, 671 F.3d at 1366, 101 USPQ2d at 1911
> (Fed. Cir. 2012) (citing *Giant Food, Inc. v. Nation's Foodservice, Inc.*
> , 710 F.2d 1565, 1570-71, 218 USPQ2d 390, 395 (Fed. Cir. 1983))."
>
> …
>
> "The respective goods need only be "related in some manner and/or if
> the circumstances surrounding their marketing [be] such that they
> could give rise to the mistaken belief that [the goods and/or services]
> emanate from the same source." *Coach Servs., Inc. v. Triumph
> Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed.
> Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715,
> 1724 (TTAB 2007)); TMEP §1207.01(a)(i)."
>
> …
>
> "Registration is refused because the applied-for mark consists of or
> includes matter which may falsely suggest a connection with Jimi

Hendrix. Although Jimi Hendrix is not connected with the goods provided by applicant under the applied-for mark, Jimi Hendrix is so famous that consumers would presume a connection. Trademark Act Section 2(a), 15 U.S.C. §1052(a); *see* TMEP §1203.03, (c). *See generally Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983); *In re Cotter & Co.*, 228 USPQ 202 (TTAB 1985); *Buffett v. Chi-Chi's, Inc.*, 226 USPQ 428 (TTAB 1985).

Under Trademark Act Section 2(a), the registration of a mark that "consists of or comprises matter that may falsely suggest a connection with persons, institutions, beliefs, or national symbols" is prohibited. *In re Pedersen*, 109 USPQ2d 1185, 1188 (TTAB 2013). To establish that an applied-for mark falsely suggests a connection with a person or an institution, the following is required:

(1) The mark sought to be registered is the same as, or a close approximation of, the name or identity previously used by another person or institution.

(2) The mark would be recognized as such, in that it points uniquely and unmistakably to that person or institution.

(3) The person or institution identified in the mark is not connected with the goods sold performed by applicant under the mark.

(4) The fame or reputation of the named person or institution is of such a nature that a connection with such person or institution would be presumed when applicant's mark is used on its goods.

*In re Pedersen*, 109 USPQ2d at 1188-89; *In re Jackson Int'l Trading Co.*, 103 USPQ2d 1417, 1419 (TTAB 2012); TMEP §1203.03(c)(i); *see also Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 703 F.2d 1372, 1375-77, 217 USPQ 505, 508-10 (Fed. Cir. 1983) (providing foundational principles for the current four-part test used to determine the existence of a false connection).

The attached Internet evidence shows that Jimi Hendrix was a famous
guitarist, singer, and songwriter, and the mark would be identified as
referencing him as his image is an element of the mark, as is shown
by the mark description of record.

The fact that applicant did not intend to adopt the name of, or trade
upon the goodwill of, the named person or institution does not obviate
a false connection refusal. Trademark Act Section 2(a) does not
require such intent. TMEP §1203.03(c)(i); *see, e.g.*, *S & L Acquisition
Co. v. Helene Arpels, Inc.*, 9 USPQ2d 1221, 1224 (TTAB 1987);
*Consol. Natural Gas v. CNG Fuel Sys., Ltd.*, 228 USPQ 752, 754
(TTAB 1985). However, evidence of such intent is highly probative
that the public will make the intended false connection. *Univ. of Notre
Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 703 F.2d 1372, 1377,
217 USPQ 505, 509 (Fed. Cir. 1983); TMEP §1203.03(c)(i).

For the aforementioned reasons, registration is refused pursuant to
Trademark Act Section 2(a).

If applicant responds to the refusals, applicant must also respond to
the requirements set forth below."

54.     Wallace   thereafter   abandoned   the   PURPLE   HAZE   LIQUEUR
application.

55.     On November 13, 2015 Defendant Wallace abandoned the application
for the mark "JH PURPLE HAZE LIQUEUR" (Serial No. 86507590).

56.     By the above applications and actions, it is clear that Defendants use,
intend to use, and to license the marks described in the Wallace Applications and
the marks shown in the Wallace Applications, for products and services sold and
marketed in interstate commerce, and contrary to the right of Plaintiffs.

57.    On information and belief, the Defendants' marketing and promotional materials, labels, tags, containers, and statements related to the infringing "Purple Haze Liquor" alcohol product are coordinated by Defendant Wallace, and constitute a joint and concerted effort to confuse the public, and to unjustly profit from the goodwill associated with Plaintiffs' business and the Hendrix Marks.

58.    Defendants have created and distributed marketing and promotional materials, and labeled their "Purple Haze Liquor" alcohol product, spirits and other products in such a way that has caused confusion, and is likely to continue to cause confusion, in the marketplace as to the source, sponsorship, affiliation, and connection of Defendants' products and services with those of Plaintiffs, and to harm Plaintiffs.  Defendants' acts include, but are not limited to:

a.    Defendants' use of a graphic design of Jimi Hendrix's bust or "headshot," as part of or separate from the words element of its "Purple Haze" liqueur brand, creates a likelihood of confusion with Plaintiffs' registered logo of a graphically designed "headshot" logo of Jimi Hendrix.  Plaintiffs have used the Jimi Hendrix headshot logo since at least as early as 1996.  Defendants have now begun to use

variations of the Jimi Hendrix headshot logo with regard to their infringing product in the marketplace.

b.   Defendants' use of the Plaintiffs' headshot logo, overwritten by the stylized "PH"[4] and/or the words "Purple Haze" created a likelihood of confusion with Plaintiffs' Hendrix Marks, including Plaintiffs' registered stylized graphical mark of Jimi Hendrix's signature in its marketing materials, Plaintiffs' "headshot" logo, and the combination of the Hendrix Marks used by Plaintiffs.

59.   Defendants' use of the entire signature of Jimi Hendrix (in a close or near identical approximation of Plaintiffs' signature logo) in its marketing materials is likely to confuse consumers.  Importantly, it is only the Hendrix indicia prominently featured on the front of the packaging of Defendants' "Purple Haze" liqueur branded product.  It is only in fine print on the back, where Tiger Paw is even identified.  It is also where the packaging directs consumers to their website information www.jimipurplehaze.com.

//
//
//
//

---

[4] Made to look like "JH"

26

## PLAINTIFFS' CLAIMS AGAINST DEFENDANTS
### FIRST CLAIM
### (Federal Trademark Infringement, 15 U.S.C. § 1114)

60.     Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth verbatim herein.

61.     Plaintiffs have adopted and used in interstate commerce the Hendrix Marks for a broad range of goods and services, including:  clothing and accessories, musical recordings (*e.g.*, CDs) and videos (*e.g.*, DVDs), printed matter (books, postcards, posters, etc.), and online (website) and entertainment services. Such Registered Marks are well-known, and they have been used continuously since long prior to Defendants' use of the marks Defendant Wallace applied for in the Wallace Applications (hereinafter collectively referred to as the "Wallace Marks").

62.     The Hendrix Marks are *prima facie* evidence of Plaintiff Experience's exclusive rights in and ownership of the marks shown therein throughout the United States, and the validity and the registrations of such marks.    The Registrations set forth in paragraph 39 are incontestable and are "conclusive evidence" of Experience's exclusive right to use such registered marks on the goods and services listed in those registrations under 15 U.S.C. § 1115(b).

63.     Defendants' uses of the Wallace Marks, and other marks and indicia of origin which are confusingly similar to the Hendrix Marks are not authorized by Plaintiffs, are likely to cause confusion, to cause mistake, and to deceive consumers as to the source of the goods and services offered by Defendants, in that consumers will likely associate, and have actually associated, Defendants' products and services with Plaintiffs', to the detriment of Plaintiffs.

64.     Defendants' infringing conduct described herein is intentional, willful, and designed to mislead, deceive, and confuse the consuming public, and to capitalize on the goodwill associated with Plaintiffs' Hendrix Marks and the Hendrix Family Companies, and is intended to palm off Defendants' goods as those of Plaintiffs.

65.     Plaintiffs have given written notice to Defendants of Plaintiffs' registrations and rights, but Defendants have refused to cease their infringing acts. By virtue of their unauthorized uses of the Wallace Marks  and other marks similar to the Hendrix Marks in interstate commerce, and the likelihood of such uses to cause confusion, to cause mistake, or to deceive, Defendants have violated, and continue to violate, the rights of Plaintiffs under the U.S. Trademark Act, giving rise to a cause of action under 15 U.S.C. § 1114(1).

66.     Unless enjoined and restrained by this Court, Defendants will continue to engage in such unlawful conduct.  Plaintiffs have no adequate remedy at law in that Defendants will continue their infringing conduct, as alleged above, in violation of 15 U.S.C. § 1114.  Plaintiffs therefore seek injunctive relief precluding Defendants from further acts of infringement and from any further use, reference to or association with the Hendrix Marks.  Plaintiffs seek such other injunctive relief as may be reasonable and appropriate to protect further infringement of their rights in and to the Hendrix Marks.  Plaintiffs seek such other injunctive way as may be reasonable and appropriate and to protect further infringement of their rights in and to the Registered Marks.

67.     Plaintiffs further allege that they have been damaged as a result of Defendants' infringing actions as alleged herein.  Plaintiffs are entitled to recover their damages, as well as Defendants' profits, treble damages, and statutory damages.  Attorney fees are authorized by U.S.C. § 1117.  Destruction of infringing articles is authorized by 15 U.S.C. § 1118.  Plaintiffs request that the court order the Defendants to withdraw and abandon the Dieffenbach Applications and Electric Applications, and not to file further USPTO applications for marks infringing on Plaintiff's rights.

## SECOND CLAIM
### (Infringement of Common Law Trademark Rights)

68.     Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth verbatim herein.

69.     Plaintiffs own and enjoy common law trademark rights in the trademarks "PURPLE HAZE," the "headshot" logo, and the Jimi Hendrix signature, and combinations of such marks, as well as other unregistered Hendrix Marks.  The acts of Defendants alleged herein constitute unfair competition and an infringement of Plaintiffs' common law rights in the Hendrix marks.

70.     Plaintiffs' rights are superior to any rights that Defendants may claim in and to the same of similar marks, in that the marks are distinctive, or have achieved secondary meaning in the marketplace, and have been used continuously by Plaintiffs to identify Plaintiffs' goods and to distinguish them from others.  Said Hendrix Marks have come to indicate to purchasers that the goods in question are authorized and produced, sponsored, or endorsed by the Jimi Hendrix "family" companies established by the sole heir of Jimi Hendrix's rights and progenies.

71.     The Defendants' use of the marks "PURPLE HAZE," a similar Jimi Hendrix "headshot" logo, and Jimi Hendrix signature, the slogans, and Experience's song titles, to advertise and sell products and services in Georgia and elsewhere throughout the United States, is intentional and designed to deceive the

public into believing that the goods sold by Defendants are made by, approved by, sponsored by, or affiliated with Plaintiffs.  Defendants' acts, as alleged herein, were committed with the intent to deceive and defraud the public and to pass off and palm off Defendants' goods and services, including vodka, merchandise, apparel, and licensing rights, as authorized by Plaintiffs and Jimi Hendrix's heirs.

72.     Defendants' infringement is believed to be willful, and will continue unless enjoined by this Court.  Plaintiffs therefore seek equitable relief in the form of an injunction precluding Defendants from further acts of infringement and from any further use, and reference to or association with Plaintiffs and their marks. Plaintiffs further seek an injunction ordering that the past infringements be corrected in writing and that all profits from Defendants' infringing acts be held in constructive trust for Plaintiffs.  Plaintiffs further seek destruction of infringing articles and such other injunctive relief as may be reasonable and appropriate to protect further infringement of its rights in and to the Hendrix Marks.

73.     By reason of Defendants' acts alleged herein, Plaintiffs have, and will suffer damage to their business, reputation, and good will and the other damages. Plaintiffs seek damages in an amount to be determined at trial.

## THIRD CLAIM
### (Federal Unfair Competition, 15 U.S.C. § 1125(a))

74.     Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth verbatim herein.

75.     Defendants advertise and offer for sale, in interstate commerce, unauthorized and infringing goods and services through use of the Hendrix Marks, and confusingly similar marks and references. Defendants' actions are intentional and designed to capitalize on the goodwill, recognition, and fame associated with the Hendrix Marks owned by Plaintiffs. Defendants' actions together create a false representation and likelihood of confusion as to the origin, source, sponsorship, endorsement, affiliation, and authenticity of the infringing products and services they are advertising and offering for sale. Defendants know that their actions are creating confusion among the consuming public and by their actions intend to confuse, defraud, and deceive the consuming public into believing that Plaintiffs produce, sponsor, or endorse Defendants' products and services, when they do not.

76.     Defendants' actions, as described above, are in violation of 15 U.S.C. § 1125(a). Unless enjoined and restrained by this Court, Defendants will continue to engage in such unlawful conduct. Plaintiffs have no adequate remedy at law in that Defendants will continue their infringing conduct. Plaintiffs therefore seek injunctive relief precluding Defendants from further acts of infringement and from

32

any further use and reference to or association with Plaintiffs and their marks. Plaintiffs further seek an injunction ordering that the past and misleading representations by Defendants be corrected in writing and that all profits made while engaging in infringing conduct be held in constructive trust for Plaintiffs. Plaintiffs further seek destruction of infringing articles as authorized by 15 U.S.C. § 1118.   Plaintiffs seek such other injunctive relief as may be reasonable and appropriate to protect further infringement of its rights in and to the Hendrix Marks.

77.    Plaintiffs further allege that they have been damaged as a result of Defendants' infringing actions as alleged herein.   Plaintiffs are entitled to recover their damages, as well as Defendants' profits, treble damages, and statutory damages.   Attorney fees are authorized by U.S.C. § 1117.

<u>**FOURTH CLAIM**</u>
**(Trademark Dilution by Blurring, 15 U.S.C. § 1125(c))**

78.    Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth verbatim herein.

79.    Plaintiffs' Hendrix Marks are famous and well-known in the United States.

80.    Defendants have made commercial use of Plaintiffs' famous marks, and those confusingly similar to them, in the marketing of their products and

33

services, which Defendants have used and transported in United Slates interstate commerce. Defendants' use began after Plaintiffs' Hendrix Marks had become famous.

81.     Defendants' acts have lessened the capacity of Plaintiffs' well-known or famous Hendrix Marks to identify and distinguish the goods and services of Plaintiffs. Defendants' acts have blurred and diluted the unique association which as heretofore existed between Plaintiffs' well-known or famous marks and the goods and services made, licensed, advertised, or sponsored by Plaintiffs, to the detriment of Plaintiffs. Defendants committed these acts willfully and with the intent to trade on the reputation and goodwill of Plaintiffs and to dilute Plaintiffs' famous marks by blurring their association with Plaintiffs as the authorized source of Jimi Hendrix music, goods, and services.

82.     Defendants' use will irreparably harm Plaintiffs and will continue unless enjoined. Plaintiffs' remedy at law is not adequate to fully compensate Plaintiffs for their injuries. Plaintiffs therefore seek injunctive relief precluding Defendants from further acts of infringement and from any further use and reference to or association with Plaintiffs and their marks. Plaintiffs seek destruction of infringing articles, as authorized by 15 U.S.C. § 1118, and an injunction against further infringement and dilution.

83.     By reason of Defendants' acts alleged herein, Plaintiffs have, and will suffer damage to their business, reputation, and goodwill and the loss of sales and profits Plaintiffs would have made but for Defendants' acts.   Plaintiffs seek damages and attorney fees, as authorized under 15 U.S.C. §§ 1125(c)(2) and 1117.

## FIFTH CLAIM
### (Trademark Dilution by Tarnishment 15 U.S.C. § 1125(c))

84.     Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth verbatim herein.

85.     Defendants' acts have tarnished Plaintiffs' well-known or famous marks by associating Plaintiffs (and their otherwise authorized goods and services) with the commercial sale of alcohol and other unauthorized goods and services.

86.     Furthermore, Defendants' acts are likely to harm the reputation of, tarnish, and further dilute Plaintiffs' Hendrix Marks, in that any defect, objection, or fault found with Defendants' products, services, and marketing efforts will necessarily reflect upon, and seriously injure, the business reputation of Plaintiffs and tarnish the Hendrix Marks, and therefore damage Plaintiffs in violation of Section 2(c) of the Trademark Act, 15 U.S.C. § 1052(c), to the detriment of Plaintiffs.  Defendants committed these acts willfully and with the intent to trade on the reputation and good will of Plaintiffs and to cause dilution of Plaintiffs' famous marks by tarnishing those marks, and Plaintiffs, by association with them.

87.     Defendants' use will irreparably harm Plaintiffs and will continue unless enjoined in this Court.  Plaintiffs' remedy at law is not adequate to fully compensate Plaintiffs for their injuries.  Plaintiffs therefore seek injunctive relief precluding Defendants from further acts of infringement and from any further use and reference to or association with Plaintiffs and their marks.  Plaintiffs seek destruction of infringing articles, as authorized by 15 U.S.C. § 1118, and an injunction against further infringement.

88.     By reason of Defendants' acts alleged herein, Plaintiffs have, and will suffer damage to their business, reputation, and good will and the loss of sales and profits Plaintiffs would have made but for Defendants' acts.  Plaintiffs seek damages and attorney fees, as authorized under 15 U.S.C. §§ 1125(c)(2) and 1117.

## SIXTH CLAIM
### (Contributory Infringement)

89.     Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth verbatim herein.

90.     Defendants Joe Wallace and Leon Hendrix are on information and belief, personally directing or controlling the infringing activities of Defendant Tiger Paw, or benefiting by such acts.

91.     By reason of the actions aforesaid, the infringement of Plaintiffs' Hendrix Marks by Defendant Tiger Paw has been directed by, and under the control or authority of, Defendants Wallace and Hendrix.

92.     Upon   information   and   belief,   Hendrix   and   Wallace   have contributorily infringed or caused the infringement of Plaintiffs' Hendrix Marks, all to the detriment of Plaintiffs.   The infringements by Hendrix and Wallace of Plaintiffs' rights in its Hendrix Marks will irreparably harm Plaintiffs, have been willful, and will continue unless enjoined by this Court.   Damages and attorney fees are authorized by 15 U.S.C. § 1117.   Destruction of infringing articles is authorized by 15 U.S.C. § 1118.

## SEVENTH CLAIM
### (Unjust Enrichment)

93.     Plaintiffs   reallege   and   incorporate   paragraphs   every   allegation contained in the preceding paragraphs as though fully set forth verbatim herein.

94.     On information and belief, Wallace, Hendrix and Defendants have wrongfully received money from third parties that they should not in equity and good conscience retain, on account of their federal and common law trademark infringements, false designations of origin, unfair competition, trademark dilution, and related acts.

95.     The benefit unjustly received by those Defendants implies a promise, or quasi-contract, to pay those benefits to Plaintiffs.

96.     Plaintiffs have demanded that Defendants stop their infringements and misappropriation of Plaintiffs' marks and business goodwill, and Defendants have refused.

97.     Plaintiffs seek restitution from Wallace, Hendrix and Defendants consisting of all profits received by those Defendants on account of their violations of Plaintiffs' rights.

## EIGHTH CLAIM
### (Constructive Trust)

98.     Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth verbatim herein.

99.     By virtue of their wrongful conduct, Defendants illegally received money and profits that rightfully belonged to Plaintiffs.

100.    Defendants are therefore involuntary trustees, holding the gross receipts from their product sales and revenues to the extent attributable to the Infringing Products and therefore attributable to the infringement of Plaintiff's trademark rights therein. Defendants hold such moneys and funds on behalf of and subject to a first and prior lien against all others and in favor of Plaintiff. On information and belief, Defendants hold this illegally received money and profits

in the form of bank account, real property, and personal property that can be located and traced.

101.    Plaintiff is entitled to the remedy of a constructive trust in view of Defendants' wrongful infringement of Plaintiffs trademarks rights.

102.    Plaintiffs have no adequate remedy at law.   In addition to the equitable remedies sought herein.  Plaintiffs seek an accounting and constructive trust on all further monies received by Hendrix, Wallace, and Defendants on account of their infringement and dilution of Plaintiffs' rights.

## NINTH CLAIM
### (Alter Ego Liability)
### Against Defendant Wallace

103.    Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth verbatim herein

104.    Defendant Wallace has exercised such dominion and control over Tiger Paw that Tiger Paw had no separate will of its own.

105.    Defendant Wallace used his dominion and control over Tiger Paw to conduct, *inter alia*, the actions complained of herein.

106.    Accordingly, Defendant Wallace must be held jointly and severally liable with Defendants on any and all claims asserted herein.

# TENTH CLAIM
## (Violation of Georgia's Uniform Deceptive Trade Practices Act O.C.G.A. § 10-1-370, *et seq.*)

107.    Plaintiffs reallege and incorporate by this reference each and every allegation set forth in this Complaint as if set forth verbatim herein.

108.    Through Defendants' unauthorized use of Plaintiffs' trademarks and the name and celebrity identity of Jimi Hendrix and other intellectual property within Georgia, Defendants have cause the likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services with Jimi Hendrix and/or Plaintiff.

109.    Through Defendants' unauthorized use of Plaintiffs' trademarks and the name and celebrity identity of Jimi Hendrix and other intellectual property within Georgia, Defendants have caused the likelihood of confusion or of misunderstanding as to Defendants' affiliation, connection, or association with Jimi Hendrix and/or Plaintiffs.

110.    Through Defendants' unauthorized use of Plaintiffs' trademarks and the name and celebrity identity of Jimi Hendrix and other intellectual property within Georgia, Defendants have misrepresented that its goods have the sponsorship and/or approval of Jimi Hendrix and/or Plaintiffs.

40

111.    Plaintiffs are informed and believe, and based thereon allege, that Defendants' actions, as stated herein, were willful and engaged in such deceptive practices knowing them to be deceptive.

112.    As a result of Defendants' actions in violation of O.C.G.A. § 10-1-370, *et seq.*, including but not limited to O.C.G.A. § 10-1-372, Plaintiffs have suffered damages and will continue to do so until such conduct is permanently stopped.  As such, Plaintiffs are entitled to injunctive relief.

113.    As a result of Defendants' wrongful acts, Plaintiffs are entitled to recover actual and compensatory damages suffered and a disgorgement of Defendants' profits gained as a result of violating Plaintiffs' rights.

114.    Plaintiffs are entitled to an award of the expenses of litigation against Defendants, including reasonable attorneys' fees, as a result of Defendants' unauthorized and intentional actions and bad faith. O.C.G.A. §§ 10-1-373, 13-6-11.

115.    Plaintiffs are entitled to an award of punitive damages against Defendants in order to punish Defendants and deter the same or similar conduct in the future. O.C.G.A. § 51-12-5.1.  Punitive damages are especially appropriate given Defendants' repeating history of intentionally engaging in deceptive trade practices.

## ELEVENTH CAUSE OF ACTION
### (Violation of Georgia's Law Against Unfair Competition –
### O.C.G.A. § 23-2-55)

116.     Plaintiffs reallege and incorporate by this reference each and every allegation set forth in this Complaint as if stated verbatim herein.

117.     Defendants have attempted to encroach upon the business of Plaintiffs by the use of Plaintiffs' trademarks, names, or devices, within the State of Georgia with the intention of deceiving and misleading the public and pass off Defendants' good as those affiliated with or endorsed by Jimi Hendrix and/or Plaintiffs.

118.     Defendants have misappropriated Plaintiffs' intellectual property without paying the license fees customarily paid licensees rightfully entitled to use Jimi Hendrix's name, likeness, image and/or celebrity identity to enhance their business ventures and mislead the consuming public to believe that Defendants' goods as those affiliated with or endorsed by Jimi Hendrix and/or Plaintiffs.

119.     By failing to pay those fees, Defendants derive an unfair competitive advantage. As such, Defendants' actions are in violation of O.C.G.A. § 23-2-55. As a result of Defendants' wrongful acts, Plaintiffs are entitled to injunctive relief, to recover actual and compensatory damages suffered and a disgorgement of Defendants' profit gained as a result of violating Plaintiffs' rights.

120.     Plaintiffs are entitled to an award of the expenses of litigation against Defendants, including reasonable attorneys' fees, as a result of Defendants' unauthorized and intentional actions and bad faith.  O.C.G.A. § 13-6-11.

121.     Plaintiffs are entitled to an award of punitive damages against Defendants in order to punish Defendants and deter the same or similar conduct in the future.  O.C.G.A. § 51-12-5.1. Punitive damages are especially appropriate given Defendants' repeating history of intentionally engaging in unfair competitive conduct trade and as Defendants' actions showed "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."

## JURY DEMAND

122.     Plaintiffs hereby request that this case be tried by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

123.     On the First, Second, Third, Fourth, Fifth, Sixth, Ninth, Tenth and Eleventh Claims of this Complaint an award of equitable relief and monetary relief, jointly and severally, against Defendants as follows:

    a.   That Defendants, their agents, servants, employees, attorneys, representatives, successors and assigns and all persons, firms, or

corporations in active concert or participation with Defendant be enjoined and restrained permanently from:

   i. directly or indirectly infringing the Hendrix Marks in any manner, including, but not limited to distributing, advertising, selling, or offering for sale any goods or services (inclusive of the Infringing Product at issue in this suit) which are confusingly similar to the Hendrix Marks;

   ii. using any mark, trade name, logo or design that tends falsely to represent, or is likely to confuse, mislead, or deceive purchasers, customers, or members of the public, that goods and services offered by Defendants originate from Plaintiff, or that said goods or services have been sponsored, approved, or licensed by or associated with Plaintiff or are in some way connected or affiliated with Plaintiff;

   iii. engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead, or deceive purchasers, members or customers, or other members of the public to believe that the actions of Defendants' is connected with Plaintiffs, is

sponsored, approved, or licensed by Plaintiffs, or is in some
way connected or affiliated with Plaintiffs;

    iv.  otherwise competing unfairly with Plaintiff in any manner;
and

    v.  diluting and infringing Plaintiff's Marks and damaging
Plaintiffs' goodwill, reputation, and business.

b.  That Defendants be required to deliver for destruction to Plaintiffs'
counsel, at the Georgia address set forth in the signature block
below, all goods in its possession or under its control, including
Defendants' Infringing Product, and any promotional and
advertising material related thereto, and any other unauthorized
items which infringe the Hendrix Marks.

c.  That Defendants be required to account for and to pay to Plaintiff all
of Defendants' profits and all of Plaintiff's damages resulting from
Defendants' foregoing infringing and unfair activities;

d.  That Plaintiffs recover from Defendants their costs of this action,
reasonable attorneys' fees, and prejudgment interest;

e.  That Plaintiff recovers from Defendants punitive damages;

    f.  That Plaintiffs have a judgment against Defendants for all profits realized by Defendants and all damages sustained by Plaintiffs by reason of the acts detailed in this Complaint and that the damages be trebled in accordance with 15 U.S.C. § 1117;

    g.  That Plaintiffs have judgment against Defendants for Plaintiffs' reasonable costs and attorney's fees in accordance with 15 U.S.C. § 1117(a) and O.C.G.A. § 10-1-373(b) and 13-6-11;

124.    On Claims Ten and Eleven of this Complaint:

    a.  That Plaintiffs have judgment against the Defendants for punitive damages in order to punish Defendants and deter the same or similar conduct in the future in accordance with O.C.G.A. §51-12-5.1.

    b.  That Plaintiffs be awarded their actual damages caused by Defendants' unlawful conduct; and

    c.  That Plaintiffs be entitled to any and all further relief as the Court may deem just and proper under the circumstances.

125.    On the Seventh and Ninth Claims of this Complaint an award of monetary relief, jointly and severally, against Defendants as follows:

    a.  The Plaintiffs be awarded those sums by which Defendants have been and will be unjustly enriched; and

b.  interest, costs of suit and such other relief as the Court deems just and proper.

126.   On the Eighth and Ninth Claims of this Complaint an award of equitable relief, jointly and severally, against Defendants as follows:

a.  imposition of a constructive trust on all assets ostensibly owned by the Defendants or in the possession, custody or control the Defendants, from their product sales and revenues to the extent attributable to the Infringing Products and therefore attributable to the infringement of Plaintiffs' Marks and rights therein;

b.  entry of an order permanently enjoining Defendants from accessing, using, transferring, withdrawing or otherwise dealing with any assets ostensibly owned by the Defendants or in the possession, custody or control the Defendants until such time as the Court orders otherwise;

c.  an accounting of any and all assets ostensibly owned by the Defendants or in the possession, custody or control the Defendants, including any transactions, acquisitions or transfers by the Defendants since their formation; and

d.  interest, costs of suit, and such other relief as the Court deems just and proper.

127.　　　　For prejudgment and post-judgment interest according to law; and

128.　　　　For such other and further relief as the Court may deem proper and just.

Respectfully submitted this 28th day of February, 2016.

**SHUKAT ARROW HAFER WEBER & HERBSMAN, LLP**


By: <u>s/ Dorothy M. Weber</u>
　　　Dorothy M. Weber (DMW 4734 NY Bar)
　　　494 Eighth Avenue, Suite 600
　　　New York, NY 10001
　　　Tel. (212) 245-4580
　　　Fax (212) 956-6471
　　　E-mail: Dorothy@musiclaw.com

　　　　　　and

**CRAIN LAW GROUP, LLC**


By: <u>s/ Michael O. Crain</u>
　　　Michael O. Crain (GA Bar # 193079)
　　　297 Prince Avenue
　　　Suite 24
　　　Athens, GA  30601
　　　Tel. / Fax (706) 548-0970
　　　E-mail:  mocrain@crainlawgroup.com