IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

EXPERIENCE HENDRIX, LLC,　　　*
a Washington Limited Liability　*
Company, and AUTHENTIC HENDRIX,　*
LLC, a Washington Limited　　　*
Liability Company,　　　　　　*
　　　　　　　　　　　　　　*
　　　　Plaintiffs,　　　　　*
　　　　　　　　　　　　　　*
　　　　　v.　　　　　　　　*　　　CV 416-107
　　　　　　　　　　　　　　*
TIGER PAW DISTRIBUTORS, LLC,　*
a California Limited Liability　*
Company; SANTA PAULA　　　　*
DISTRIBUTORS, INC.; SAVANNAH　*
DISTRIBUTING CO., a Georgia　*
Corporation; and JOE WALLACE　*
and LEON HENDRIX, individuals,　*
　　　　　　　　　　　　　　*
　　　　Defendants.　　　　*

ORDER

　　　Presently before the Court is Plaintiffs' motion for
preliminary injunction. (Doc. 27.) For the reasons below,
Plaintiffs' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

　　　The instant case is the latest of numerous legal actions
between family members of the late musician Jimi Hendrix
("Jimi"). (Am. Compl., Doc. 24, ¶¶ 17-24.) Here, Plaintiffs –
whose president and chief executive officer is Jimi's
stepsister, Janie Hendrix – have filed suit against Tiger Paw
Distributors, LLC ("Tiger Paw"), Santa Paula Distributors, Inc.

("Santa Paula"), Private Label Distillery, LLC ("Private Label"), Savannah Distributing Co. ("Savannah Distributing"), Joe Wallace, and Leon Hendrix, Jimi's brother. (Id. ¶¶ 18-20; Janie Decl., Doc. 27-2, ¶ 1; Weber Decl. II, Doc. 27-4, Ex. 17.) According to Plaintiffs, Defendants – in manufacturing, distributing, and promoting the alcoholic beverage "Purple Haze Liquer" – have committed, among other things, trademark infringement and dilution.[1] (Am. Compl. ¶¶ 21-25, 73-80, 91-101, 145.)



*Purple Haze Liquer*

---

[1] The concept of Purple Haze Liquer was developed by Defendant Tiger Paw and its president, Defendant Wallace. (Am. Compl. ¶¶ 7, 23.) Thereafter, agreements were made such that (1) Defendant Hendrix would promote the beverage; (2) Private Label would manufacture the beverage; and (3) Defendant Santa Paula would provide bottles of the beverage to (4) Defendant Savannah Distributing who would distribute the beverage. (Id. ¶¶ 6, 8, 21; Consent J., Doc. 97, at 2.) However, Private Label has been dismissed from this suit, and a permanent injunction has been entered against Defendant Santa Paula. (Docs. 22, 97.) Accordingly, these parties are not subject to the provisions of this order.

In their amended complaint, Plaintiffs contend that Defendants have infringed on their trademarks in three ways. First, Defendants are manufacturing, distributing, and promoting a product with a label that features "Plaintiffs' headshot logo, overwritten by the stylized 'PH' and the words 'Purple Haze.'" (Id. ¶ 25.) Second, Tiger Paw has displayed a Jimi Hendrix signature on its website. (Id. ¶ 70.) Third, Tiger Paw has inserted the word "jimi" in the names of its website and its Facebook, Twitter, and Instagram profiles.[2] (Id. ¶¶ 68, 69, 71; Weber Decl. II at 11.)



*Plaintiffs' Trademark*



*Plaintiffs' Trademark*

As for trademark dilution, Plaintiffs maintain that Defendants have – also in three ways – harmed the reputation and value of their trademarks. First, Defendants are selling alcohol, a product that Plaintiffs have opted not to promote because of its role in Jimi's death. (Am. Compl. ¶ 54.) Second, Tiger Paw's YouTube channel, "Tiger Paw Liquer Entertainment," features a "photograph of Jimi Hendrix smoking a

---

[2]  Tiger Paw's web address – www.jimipurplehaze.com – appears on the back of each bottle of Purple Haze Liquer. (Pl.'s Ex. 1, Doc. 89.) Additionally, the Court will, unless otherwise provided, refer to Tiger Paw's website and its Facebook, Twitter, and Instagram profiles as Tiger Paw's "online platforms."

joint," at least one video promoting "a Cannabis Festival," and frequent appearances from DJ Quik, who "talks music, Purple Haze Liquer, Gang Banging, & More" on "One Day Radio." (Id. ¶ 68 (internal quotation marks omitted).) Third, Tiger Paw's Instagram account has featured a video promoting Purple Haze Liquer in a nightclub where sexually-suggestive conduct is widespread. (Pls.' Supp. Mem., Doc. 75, at 2; Videos, Doc. 74.)

Although the substance of their claims rests on these allegations, Plaintiffs also stress three pieces of background information. First, on February 12, 2009, the United States District Court for the Western District of Washington permanently enjoined Electric Hendrix, LLC, Electric Apparel, LLC, Electric Hendrix Licensing, LLC, Electric Hendrix Spirits, LLC, and Craig Dieffenbach – a known associate of Defendant Hendrix – from "using, advertising, registering, applying to register, or challenging" certain trademarks belonging to Plaintiffs, including the ones at issue here. See Experience Hendrix, LLC v. Electric Hendrix, LLC, No. C07-0338, slip op. at 2 (W.D. Wash. Feb. 12, 2009). This injunction stemmed from Plaintiffs' claim that the defendants had infringed on their trademarks by "selling, bottling, and marketing vodka as 'Hendrix Electric,' 'Jimi Hendrix Electric,' and 'Jimi Hendrix Electric Vodka.'" See Experience Hendrix, LLC v. Electric Hendrix, LLC, No. C07-0338, 2008 WL 3243896, at *1 (W.D. Wash.

Aug. 7, 2008). Second, on May 11, 2015, the United States Patent and Trademark Office ("USPTO") denied two trademark applications made by Defendant Wallace: one for "JH PURPLE HAZE LIQUER" that would apply to "distilled spirits, spirits, spirits and liquers" and the other for "PURPLE HAZE LIQUER" that would also apply to "distilled spirits, spirits, spirits and liquers." (Am. Compl. ¶¶ 56, 58, 63, 64.) Third, before instituting this suit, "Plaintiffs . . . [gave] written notice to Defendants of Plaintiffs' registration and rights, but Defendants . . . refused to cease their infringing acts."[3] (Id. ¶ 78.)

Ultimately, on February 29, 2016, Plaintiffs commenced this suit in the United States District Court for the Northern District of Georgia, and shortly thereafter, Plaintiffs filed the instant motion for preliminary injunction. Yet, on May 10, 2016, before a hearing could be held on Plaintiffs' motion, their case was transferred to this Court. (Doc. 58.) Since that time, however, the Court has received the parties' briefs and held the requested hearing. As a result, Plaintiffs' motion is now ripe for the Court's consideration.

---

[3] As of May 2, 2016, Tiger Paw had removed its "jimipurplehaze.com" website, their "jimipurplehazeliquer" Facebook profile, and their "jimipurplehaze" Twitter and Instagram profiles. (Tarver Decl., Doc. 50-6, ¶¶ 5-8.) Nevertheless, "[o]n May 11, 2016, seventeen (17) hours after it was posted, Plaintiffs uncovered a new promotional video posted on Defendants' Instagram . . . account featuring barely-clothed pole-dancers with bottles of Defendants' 'Purple Haze' liquor product." (Pls.' Supp. Mem. at 2.) According to Tiger Paw, the Instagram account "had been inadvertently logged into, subsequent to deactivation, which caused Instagram to automatically reactivate it and repost its content." (Tarver Decl. ¶ 4.) Since that time, however, "Defendants [have] contacted Instagram in person and were able to permanently change their online account name to 'tigerpawbeverages.'" (Id. ¶ 5.)

## II. DISCUSSION

In the Eleventh Circuit, "[i]t is well established . . . that [a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the burden of persuasion as to [the following] four elements": "(1) substantial likelihood of success on the merits; (2) that it would be irreparably harmed if injunctive relief were denied; (3) that the threatened injury to the trademark owner outweighs whatever damage the injunction may cause to the alleged infringer; and (4) that the injunction, if issued, would not be adverse to the public interest." Davidoff & CIE, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1300 (11th Cir. 2001) (internal quotation marks and citation omitted).

### A. Substantial Likelihood of Success on the Merits

#### 1. Trademark Infringement

To succeed on the merits of a trademark infringement claim, a plaintiff must show (1) "that it has trademark rights in the mark or the name at issue" and (2) "that the defendant adopted a mark or name that was the same, or confusingly similar to the plaintiff's mark, such that there was a likelihood of confusion for consumers as to the proper origin of the goods [or services] created by the defendant's use of the . . . name." Ferrellgas Partners, L.P. v. Barrow, 143 F. App'x 180, 186 (11th Cir. 2005) (internal quotation marks and citation omitted).

6

### a. Plaintiffs' Trademark Rights

Here, Plaintiffs contend that Defendants have infringed on at least one of their thirty-four trademarks:

(1)  JIMI HENDRIX – No. 2,322,761

(2)  AUTHENTIC HENDRIX – No. 2,245,408

(3)  EXPERIENCE HENDRIX – No. 2,245,409

(4)  EXPERIENCE HENDRIX AND DESIGN – No. 2,250,912

(5)  JIMI HENDRIX – No. 2,383,500

(6)  JIMI HENDRIX – No. 2,997,676

(7)  EXPERIENCE HENDRIX – No. 2,987,556

(8)  JIMI HENDRIX AND DESIGN – No. 3,001,465

(9)  JIMI HENDRIX AND DESIGN – No. 3,001,464

(10) JIMI HENDRIX.com – No. 2,998,059

(11) JIMI HENDRIX.com AND DESIGN – No. 2,998,058

(12) MISCELLANEOUS DESIGN – No. 3,072,909

(13) AUTHENTIC HENDRIX AND DESIGN – No. 3,312,206

(14) AUTHENTIC HENDRIX AND DESIGN – No. 3,312,071

(15) AUTHENTIC HENDRIX AND DESIGN – No. 3,312,117

(16) AUTHENTIC HENDRIX AND DESIGN – No. 3,297,742

(17) AUTHENTIC HENDRIX AND DESIGN – No. 3,297,740

(18) AUTHENTIC HENDRIX AND DESIGN – No. 3,334,862

(19) AUTHENTIC HENDRIX AND DESIGN – No. 3,399,951

(20) AUTHENTIC HENDRIX AND DESIGN – No. 3,865,983

(21) HENDRIX – No. 3,409,133

(22) HENDRIX – No. 3,409,132

(23) HENDRIX – No. 3,302,110

(24) HENDRIX – No. 3,302,093

(25) HENDRIX – No. 3,302,118

(26) JIMI HENDRIX AND DESIGN – No. 3,290,861

(27) JIMI HENDRIX AND DESIGN – No. 3,306,892

(28) JIMI HENDRIX AND DESIGN – No. 3,306,891

(29) JIMI HENDRIX ELECTRIC GUITAR COMPETITION – No.
3,374,813

(30) JIMI HENDRIX ELECTRIC GUITAR COMPETITION – No.
3,328,324

(31) JIMI HENDRIX ELECTRIC GUITAR FESTIVAL – No. 3,322,319

(32) JIMI HENDRIX I AM EXPERIENCED AND DESIGN – No.
3,290,862

(33) JIMI HENDRIX AND DESIGN – No. 3,328,587

(34) JIMI HENDRIX AND DESIGN – No. 3,328,579.[4]

### b. Likelihood of Confusion

In deciding whether consumers are likely to be confused
between two marks, courts generally analyze seven factors: "(1)
the strength of the plaintiff's mark[s]; (2) the similarities
between the plaintiff's mark and the allegedly infringing mark;
(3) the similarity between the products and services offered by
the plaintiff and the defendant; (4) the similarity of the sales

---

[4]  Images of these trademarks can be found in Exhibit 3 attached to
Plaintiffs' motion for preliminary injunction. (Doc. 27-3.)

methods, *i.e.*, retail outlets or customers; (5) the similarity of advertising methods; (6) the defendant's intent, *e.g.*, does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) the most persuasive factor on likely confusion is proof of actual confusion." <u>Ferrellgas Partners</u>, 143 F. App'x at 186 (internal quotation marks and citation omitted).

### i. Strength of Plaintiffs' Marks

Registered trademarks "fall into four categories of strength: (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary." <u>Dieter v. B & H Indus. of Sw. Fla., Inc.</u>, 880 F.2d 322, 327 (11th Cir. 1989). Generic marks – "those which name the genus or class of which an individual article or service is but a member" – can never be registered as trademarks. <u>Id.</u> (internal quotation marks and citation omitted). Descriptive marks, which "identify a characteristic or quality of an article or service," can only be registered if "the holder shows that the mark has acquired 'secondary meaning.'" <u>Id.</u> Suggestive marks "suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive." <u>Id.</u> (internal quotation marks and citation omitted). Lastly, "'fanciful' or 'arbitrary' terms are words or phrases that bear no direct relationship to the product." <u>Id.</u> In terms of a spectrum, generic marks "represent

the weaker end," and arbitrary terms "represent the stronger." Id.

In this case, only those of Plaintiffs' trademarks that (1) include portions of Jimi's name or (2) feature the Jimi "bust" are at issue. Addressing the former first, "[n]ames – both surnames and first names – are regarded as descriptive terms and therefore one who claims federal trademark rights in a name must prove that the name has acquired a secondary meaning." Tana v. Dantanna's, 611 F.3d 767, 774 (11th Cir. 2010) (internal quotation marks and citation omitted). However, a name can acquire secondary meaning when its "primary significance . . . in the minds of the consuming public is not the product but the producer." Id. (internal quotation marks and citation omitted).

Because of Jimi Hendrix's undeniable fame, those of Plaintiff's trademarks bearing his name – or portions thereof – have secondary meaning and are thus strong. See Experience Hendrix, 2008 WL 3243896, at *9. As for Plaintiffs' trademarks that include the bust logo, the Court agrees with the Western District of Washington in that the "arbitrary nature of [the bust's] features" also makes these marks strong. See id.

### ii. Similarities between Plaintiffs' and Defendants' Marks

In arguing that Plaintiffs' and Defendants' marks are similar, Plaintiffs provide side-by-side pictures of the product that the Western District of Washington permanently enjoined and

10

the product at issue here. (Pls.' Mem. at 19; Weber Decl. ¶ 12.) Yet, the enjoined product is not the focus of the instant motion. Instead, the Court's focus is a comparison of Plaintiffs' trademarks against (1) Tiger Paw's product labeling and (2) its online platforms.[5]

With respect to the product labeling, the Court, having evaluated the disputed marks both individually and collectively, makes the following conclusions. See Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 29 (1st Cir. 1989) ("Similarity is determined on the basis of the total effect of the designation, rather than a comparison of the individual features." (internal quotation marks and citation omitted)). First, when considering the text "Purple Haze Liquer" and its accompanying formatting, the Court concludes that this mark is not similar to any of Plaintiffs' registered trademarks.[6] Second, the stylized "PH," which could arguably be viewed as a "JH," is different both in style and in text from Plaintiffs' trademarks in the ordinary JIMI HENDRIX text and the JIMI HENDRIX signature. Third, while Tiger Paw's label and the Jimi bust both feature a silhouette image of a male, presumably African American, with an afro haircut wearing a collared jacket, the similarities end there.

---

[5] Images of Plaintiffs' trademarks and Tiger Paw's product labeling can be found on pages 2-3 supra.

[6] While Plaintiff Experience Hendrix, LLC, owns the copyright to Jimi's song entitled "Purple Haze," neither Plaintiff owns any trademark that incorporates this title. (Am. Compl. ¶ 33.)

Unlike the male in Plaintiffs' trademark who is clean shaven and facing forward, the male in Tiger Paw's image has a mustache and sideburns and is looking to his right as a stylized "PH" flows from his head and flames emerge from his back. Furthermore, Plaintiffs' trademark stops slightly below the shoulders of the pictured male, whereas Tiger Paw's image extends to show the male's arms and waist.[7]

As for Tiger Paw's online activities, Plaintiffs point to the following conduct as infringing: (1) Tiger Paw's use of "jimi" in the names of its online platforms and (2) Tiger Paw's display of a Jimi Hendrix signature on its website. Because of the unique spelling of Jimi's first name, the Court finds that those of Tiger Paw's platforms featuring this text are similar to Plaintiffs' trademarks in JIMI HENDRIX, HENDRIX, and JIMIHENDRIX.COM. Additionally, though the Jimi Hendrix signature displayed on Tiger Paw's website is technically distinct from Plaintiffs' trademarks, the marks are more similar than they are different. (Am. Compl. ¶ 70.)

### iii. Similarity of Products and Services Offered

In varying ways, each Defendant competes in the alcoholic beverage industry. Meanwhile, Plaintiffs do not compete in this industry "[b]ecause drugs and alcohol have been connected to

---

[7] The Court has the benefit of reviewing an actual bottle of Purple Haze Liquer, which was tendered as evidence by Plaintiffs' counsel at the June 2 hearing. (Pls.' Ex. 1.)

Jimi Hendrix's untimely death, and because Jimi Hendrix fans, and Plaintiffs' customers, include a large number of young people." (Am. Compl. ¶ 54.) Thus, Plaintiffs submit that this factor should not weigh against them because had they so chosen, they could have been competing, with trademarks, in the alcohol industry.

Though Plaintiffs' argument is logical, the similarity of products offered by the parties is a factor in the likelihood of confusion analysis that must be given due consideration. Accordingly, this third factor weighs in favor of Defendants. Nevertheless, the Court is aware that the Eleventh Circuit Court of Appeals has been reluctant to allow this factor to negate a finding of likelihood of confusion where other factors weigh strongly in a plaintiff's favor. See, e.g., Univ. of Ga. Athletic Ass'n v. Laite, 756 F.2d 1535, 1547 (11th Cir. 1985) ("[W]e find the remaining three factors, similarity of product, identity of retail outlets and purchasers, and identity of advertising media utilized, less significant in the instant case than in most trade or service mark cases.").

### iv. Similarity of Sales Methods

Given the evidence at hand, it appears that Plaintiffs sell their products online, whereas Tiger Paw uses third parties to distribute its products to retail stores that sell "Purple Haze" and other liquor to the public. (Lauson Decl., Doc. 50, Exs. O-

13

Q; Wallace Decl. ¶¶ 6-7.) As a result, the similarity of sales methods factor weighs in favor of Defendants.

### v. Similarity of Advertising Methods

As for advertising, both Plaintiffs and Tiger Paw use their online platforms to attract Jimi Hendrix fans and thereby sell their products. (Id.) Consequently, this factor weighs in Plaintiffs' favor.

### vi. Defendants' Intent

Next, the Court must consider whether Tiger Paw acted in bad faith in using the marks at issue. See Trilink Saw Chain, LLC v. Blount, Inc., 583 F. Supp. 2d 1293, 1316-17 (N.D. Ga. 2008). To make this showing, Plaintiffs must prove that Tiger Paw (1) adopted Plaintiffs' marks with the intention of deriving a benefit from their business goodwill and reputation or (2) was intentionally blind to confusion between the marks. See id. at 1317.

Here, Plaintiffs posit that "the overwhelming evidence confirms that Defendants purposely adopted the infringing marks and features of the Hendrix Marks en masse." (Pls.' Mem., Doc. 27-1, at 17-18.) On one hand, given the similarity between the Jimi Hendrix signature that Tiger Paw displayed on its website and the JIMI HENDRIX signature that Plaintiffs have trademarked, the Court agrees with Plaintiffs and finds that Tiger Paw was, at the very least, "intentionally blind to confusion" between

14

the two marks. On the other hand, regarding Tiger Paw's product labeling and the naming of their online platforms, the Court cannot agree. At most, Plaintiffs' evidence indicates that Tiger Paw attempted to create an association with Jimi Hendrix the person, not Plaintiffs' trademarks. Accordingly, the intent factor, as it relates to the Jimi Hendrix signature that Tiger Paw has displayed, weighs in favor of Plaintiffs. In all other respects, the factor weighs in favor of Defendants.

### vii. Proof of Actual Confusion

As for the final factor, "[t]he law is well settled in this circuit that evidence of *actual* confusion between trademarks is not necessary to a finding of *likelihood* of confusion, although it is the best such evidence." E. Remy Martin & Co. v. Shaw Ross Int'l Imports, Inc., 756 F.2d 1525, 1529 (11th Cir. 1985). Thus, in an attempt to demonstrate actual confusion, Plaintiffs have submitted the declaration of Michael O. Crain, the declaration of Janie Hendrix, and a number of Facebook posts. (Docs. 27-2, 27-3, 27-5.)

In his declaration, Michael Crain, "a lawyer for Plaintiffs in the above-styled action," indicated that on or about December 12, 2015, he placed an order for a bottle of Purple Haze Liquer with Five Points Bottle Shop in Athens, Georgia. (Doc. 27-5.) According to Crain, when that bottle arrived in their Athens store, Five Points Bottle Shop called to inform him that his

"Jimi Hendrix vodka had come in and was available for pick up."
(Id.) (internal quotation marks omitted). Later, Crain drove to
the bottle shop and purchased the Purple Haze Liquer that he had
originally ordered. (Id.)

In her declaration, Janie Hendrix stated that "Defendants'
conduct herein has caused actual confusion in the marketplace by
the sale of 'Purple Haze Liquer.'" (Doc. 27-2.) As evidence of
her claim, Janie points to a number of Facebook posts made in
response to an article entitled "Jimi Hendrix Purple Haze
[L]iquer [L]aunched":

- "The Hendrix estate are a bunch of f****** vultures."

- "So the Hendrix estate wouldn't license music for a
  biopic, but they'll stick his face on this purple s***? Oh,
  ok."

- "I wouldn't give the Hendrix estate my p***. Do you
  think I'm going to buy this f****** drink. Another
  disgusting money-making scheme from a bunch of vultures."

- "Jimi would be deeply ashamed I think."

- "Who authorized this bulls***."

_ "Little tasteless and tacky on the Hendrix family to
  market something like this considering his death was
  associated with barbiturates and Alcoholl [sic]."

(Doc. 27-3, Ex. 8.)

16

Based on this submitted evidence, it is clear that members of the public have associated Tiger Paw's product with Jimi Hendrix, Jimi Hendrix's music, Jimi Hendrix's estate, and "Jimi Hendrix vodka." However, Plaintiffs have not produced any evidence indicating that members of the public have confused Tiger Paw's product with Plaintiffs or their trademarks. While the Facebook posts do suggest confusion between Tiger Paw and Jimi's estate, the Court has no evidence indicating that these Facebook users know — or would be likely to know — that Al Hendrix "transferred all rights from Jimi's estate into [Plaintiffs]." (Pls.' Mem. at 2.) Accordingly, the final factor weighs in favor of Defendants.

Now, having evaluated all seven factors, the Court finds that Plaintiffs have demonstrated a substantial likelihood of confusion between Plaintiffs' trademarks and (1) the "jimi" used in the names of Tiger Paw's online platforms and (2) the Jimi Hendrix signature displayed on Tiger Paw's website. Though Plaintiffs have not demonstrated actual confusion with respect to these marks, the strength of these marks, the similarity between the parties' marks, and Tiger Paw's intent as to Plaintiffs' signature mark are, on balance, enough for the Court to reach this conclusion. As for Plaintiffs' marks and the marks found on Tiger Paw's product labeling, no substantial likelihood of confusion exists. While Plaintiffs' trademarks

are strong, Tiger Paw's marks are not sufficiently similar; Tiger Paw's marks have not actually been confused with Plaintiffs'; and Tiger Paw has not acted in bad faith with respect to Plaintiffs' marks. Consequently, at this stage, only Plaintiffs' trademark claims that challenge the "jimi" used in the names of Defendants' online platforms and the Jimi Hendrix signature displayed on Tiger Paw's website have a substantial likelihood of success on the merits.

## 2. Trademark Dilution - 15 U.S.C. § 1125

Under 15 U.S.C. § 1125(c),

> the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

Put another way, to establish a dilution claim, a plaintiff "must provide sufficient evidence that (1) the mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce." Brain Pharma, LLC v. Scalini, 858 F. Supp. 2d 1349, 1356 (S.D. Fla. 2012) (internal quotation marks and citation omitted).

As has been clearly established, Jimi Hendrix and his music are famous. However, the Court has not received evidence from

18

Plaintiffs indicating that there is a substantial likelihood that *Plaintiffs' trademarks* are famous. At oral arguments, Plaintiffs emphasized that Plaintiffs' trademarks are incontestable – just as the Coca-Cola logo and the McDonald's golden arches are. (Prelim. Inj. Hr'g Tr., Doc. 91, at 10.) Yet, whether or not a mark is incontestable has no bearing on the fame of that particular mark. See Dieter v. B & H Indus. of Sw. Fla., 880 F.2d 322, 329 (11th Cir. 1989). Consequently, without more, this Court cannot conclude that Plaintiffs' trademarks are "famous" – i.e., "widely recognized by the general consuming public of the United States." See 15 U.S.C. § 1125(c)(2)(A).[8] For that reason, Plaintiffs have not established that their federal dilution claim has a substantial likelihood of success on the merits.

### 3. Trademark Dilution – O.C.G.A. § 10-1-451

Within their complaint, Plaintiffs have not pled a dilution claim pursuant to O.C.G.A. § 10-1-451. Accordingly, the Court cannot consider this claim as a basis upon which to grant Plaintiffs' motion for a preliminary injunction. See Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief.").

---

[8] While it did recognize that Jimi Hendrix was a famous person, the USPTO, as part of its decisions on Defendant Wallace's trademark applications, did not state that Plaintiffs' marks were "famous marks." (Weber Decl. II, Exs. 15-16.)

## B.  Irreparable Harm

In the past, the Eleventh Circuit has held that "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm." See *Ferrellgas Partners*, 143 F. App'x at 191 (internal quotation marks and citation omitted).  However, the Supreme Court's decision in *eBay Inc. v. MercExhange, LLC*, 547 U.S. 388 (2006), has cast doubt on the legality of this presumption.  See *Uber Promotions, Inc. v. Uber Techs., Inc.*, No. 1:15CV206, 2016 WL 617450, at *2 (N.D. Fla. Feb. 16, 2016) (stating that the appropriateness of the irreparable harm presumption is "doubtful" after the *eBay* decision).  Nevertheless, Plaintiffs maintain that even if *eBay* bars the irreparable harm presumption, they can still make the necessary showing because of "[the] loss of control of [their] reputation, [the] loss of trade, and [the] loss of goodwill" that the continued distribution of Tiger Paw's product will cause.  (Pls.' Reply, Doc. 56, at 5.)

As noted above, consumers are likely to confuse the names of Tiger Paw's online platforms with at least one of Plaintiffs' trademarks.  Thus, it naturally follows that consumers are also likely to confuse the content of Tiger Paw's online platforms with Plaintiffs' trademarks.  In that vein, Plaintiffs fear that

20

Tiger Paw's online promotion of alcohol consumption, drug use, and sexually-suggestive behavior will hinder their image of a family-friendly, alcohol and drug-free Jimi Hendrix. The Court, after reviewing the content on Tiger Paw's online platforms, agrees with Plaintiffs and accordingly finds a substantial threat of irreparable harm. See Ferrellgas Partners, 143 F. App'x at 190 (providing that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill").

## C. Balancing Harms

With respect to Defendants Tiger Paw, Wallace, and Hendrix, the Court has little reason to believe that these parties would be substantially harmed by an order enjoining them from using the word "jimi" on their online platforms and displaying a signature similar to the one Plaintiffs have trademarked. The Court bases this conclusion on (1) evidence indicating that Tiger Paw and Wallace have already taken measures to rename their online platforms and to remove the aforementioned signature and (2) Hendrix's representation that he has no opposition to such an injunction.[9] (Leon Hendrix Br., Doc. 42, at 2; Tarver Decl., Doc. 50-6, ¶¶ 5-9.)

---

[9] For these same reasons, the Court also concludes that the injunction described above will not unduly prejudice Defendants. Accordingly, the defense of laches will not protect Defendants from the requested relief. See Spiral Direct, Inc. v. Basic Sports Apparel, Inc., No. 6:15-cv-641, 2015 WL 9450575, at *7 (M.D. Fla. Nov. 24, 2015) ("[T]here are three elements to the defense of laches: '(1) a delay in asserting a right or a claim; (2) that the

21

Meanwhile, the Court is concerned about the harm that Savannah Distributing would incur if an injunction was entered against it. According to Savannah Distributing, if it was subject to an injunction, its consumer base would infer wrongdoing and, consequently, its reputation would be damaged. (Prelim. Inj. Hr'g Tr., at 52-53.) Although uncertain as to the exact amount of potential damage, the Court – when considering that Savannah Distributing has returned all Purple Haze products and cut all ties with the brand – is confident that the harm an injunction would cause to Savannah Distributing would outweigh any injury Savannah Distributing threatens against Plaintiffs. (Prelim. Inj. Hr'g Tr., at 63.)

### D. Public Interest

Because Tiger Paw's use of the word "jimi" and its display of the Jimi Hendrix signature are, on the evidence before the Court, likely to cause confusion with Plaintiffs' trademarks, the Court finds that an injunction is in the public interest. See Ferrellgas Partners, 143 F. App'x at 191 ("[T]he public interest will be served by the injunction by avoiding confusion in the marketplace.").

---

delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted.'" (quoting Kason Indus., Inc. v. Component Hardware Grp., Inc., 120 F.3d 1199, 1203 (11th Cir. 1997))).

### III. CONCLUSION

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for preliminary injunction (Doc. 27). Accordingly, the Court **ENJOINS** Defendants Tiger Paw, Wallace, and Hendrix (1) from using the word "jimi" in the names of their websites, social media profiles, or other online platforms; (2) from manufacturing, distributing, selling, or promoting any bottle of Purple Haze Liquer that has the web address www.jimipurplehaze.com printed visibly thereupon; and (3) from displaying the aforementioned signature of Jimi Hendrix on any of their labeling or marketing materials.

**ORDER ENTERED** at Augusta, Georgia, this _22nd_ day of June, 2016.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA